IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SCOTT MASSENGILL,<br><br>　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>*Acting Commissioner of Social Security*,<br><br>　Defendant. | §<br>§<br>§<br>§<br>§   Civil Action No. 4:21-cv-278-SDJ-KPJ<br>§<br>§<br>§<br>§<br>§<br>§ |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Scott Massengill ("Mr. Massengill") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability insurance benefits and supplemental security income. Having considered the briefs submitted by the parties and the administrative record, the Court recommends the Commissioner's final decision be **AFFIRMED**.

## I.　APPLICABLE LAW

### A.　Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

B.   **Standard of Review**

The standard of review in a social security appeal is whether the Commissioner's final decision[3] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.     BACKGROUND AND PROCEDURAL HISTORY

Mr. Massengill was born in 1966, completed high school, and last worked for a surgical supply company delivering parts until he stopped working in 2016.[4] *See* Tr. 13, 23, 36–37, 67. On September 11, 2018, Mr. Massengill filed an application for Disability Insurance Benefits ("DIB"). *See* Tr. 10, 160–63. On July 11, 2020, Mr. Massengill filed an application for Supplemental Security Income ("SSI"). *See* Tr. 10. In both applications, Mr. Massengill alleged disability since January 1, 2016, due to "L5 ruptured, needs surgery, sciatica pain; HBP [high blood pressure]; [a]nxiety – panic attacks, doesn't do well around people; stomach problems – needs surgery; [h]eadaches/[m]igraines; [i]nsomnia due to pain, depression, memory loss; numbness/tingling, swelling in feet/knees; nerve damage from back into legs; chronic pain; and chronic fatigue." *See* Tr. 10, 68. The Social Security Administration ("SSA") denied Mr. Massengill's claims initially on February 11, 2019, and upon reconsideration on June 18, 2019. *See* Tr. 10, 101–10. Thereafter, Mr. Massengill filed a written request for a hearing. *See* Tr. 111–12. On July 15, 2020, Administrative Law Judge Kathleen H. Eiler (the "ALJ") held a hearing. *See* Tr. 30–66. The hearing was attended by Mr. Massengill, his attorney, and a vocational expert (the "VE"). *See* Tr. 30.

On October 6, 2020, the ALJ issued an unfavorable decision denying Mr. Massengill's claims. *See* Tr. 7–24. In her decision, the ALJ found that Mr. Massengill met the insured status requirements of the Social Security Act (the "Act") through December 31, 2020. *See* Tr. 13. At step one, the ALJ found that Mr. Massengill had not engaged in substantial gainful activity since January 1, 2016, his alleged onset date. *Id.* At step two, the ALJ found that Mr. Massengill had the

---

[4] Documents 11-1 through 11-15 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

following severe impairments: degenerative disc disease of the cervical and lumbar spine; irritable bowel syndrome ("IBS"); depressive disorder; and anxiety disorder. *Id*. The ALJ found that Mr. Massengill's hypertension was a non-severe impairment and Mr. Massengill's headache allegations did not establish "a medically determinable—much less 'severe'—impairment." *Id.* at 13–14. At step three, the ALJ found that none of Mr. Massengill's impairments, alone or in combination, met or medically equaled a Listing. *See* Tr. 14–16. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Massengill's RFC. *See* Tr. 16–22. The ALJ found Mr. Massengill had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), subject to the following limitations: never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; avoid concentrated exposure to workplace hazards; can apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; can deal with problems involving a few concrete variables in or from standardized situations; cannot perform production rate pace work; and can occasionally interact with the general public.

*See* Tr. 16. At step four, the ALJ found that Mr. Massengill was unable to perform his past relevant work. *See* Tr. 22–23. At step five, the ALJ determined that considering Mr. Massengill's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy he could perform. *See* Tr. 23–24. Relying on the VE's testimony, the ALJ determined that Mr. Massengill could perform occupations such as silver wrapper, routing clerk, and retail marker. *See* Tr. 24. Accordingly, the ALJ concluded Mr. Massengill was not disabled within the meaning of the Social Security Act (the "Act"). *Id*.

Mr. Massengill requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 278–79. On February 8, 2021, the Appeals Council denied the request for review. *See* Tr. 1–4. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*,

530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Mr. Massengill filed his appeal to this Court.[5] *See* Dkt. 1.

### III.   ANALYSIS

Mr. Massengill raises two arguments on appeal. First, he argues the ALJ erred in relying on the opinions of state agency medical consultants, Dr. Amita Hedge, M.D., and Dr. Kim Rowlands, M.D., because the opinions were rendered prior to MRI studies of Mr. Massengill's cervical and lumbar spine. *See* Dkt. 14 at 4–7. Second, Mr. Massengill contends the ALJ failed to include any limitations related to his headaches in the RFC assessment. *See* Dkt. 14 at 7–8. As set forth below, the Court finds that Mr. Massengill's arguments lack merit.

**A.  Opinions of State Agency Medical Consultants ("SAMC")**

In February 2019, SAMC Hedge opined that Mr. Massengill could perform light work with the following additional physical limitations: occasionally lifting and/or carrying up to twenty pounds, frequently lifting and/or carrying up to ten pounds, standing and/or walking (with normal breaks) for a total of six hours in an eight-hour workday, sitting (with normal breaks) for a total of six hours in an eight-hour workday; frequently climbing ramps, stairs, ladders, ropes, and scaffolds; and frequently stooping. *See* Tr. 74–75, 79. In June 2019, at the reconsideration level, SAMC Rowlands affirmed SAMC Hedge's assessment. *See* Tr. 91–92, 96. The ALJ found both opinions persuasive. *See* Tr. 21. In her written decision, the ALJ explained:

> The opinions of the State agency reviewing physicians are persuasive. They are supported by the findings documented in the consultative physical examination report from Dr. Neurgaonkar. Their assessments are also consistent with the preponderance of the other medical evidence of record, including the cervical and lumbar spine pathology in combination with the objective findings documented in the primary care records, including records submitted after their assessments. Further, the record contains no other opinions finding [Mr. Massengill] more physically limited than set forth above.

---

[5] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 2.

Tr. 21.

On appeal, Mr. Massengill argues the ALJ erred in finding the SAMC opinions persuasive because both opinions pre-dated the August 2019 MRI studies of Mr. Massengill's cervical and lumbar spine. *See* Dkt. 14 at 4–7. Mr. Massengill contends the MRI studies showed "significant disc herniation and nerve root impingement," which should have prompted the ALJ, "a medical layman," to "call[] upon a medical expert witness to review and comment upon the new medical evidence" or remand to the state agency for reconsideration. *Id.* at 4–6. This argument lacks merit.

An ALJ "is only required to request an updated medical opinion from a state agency medical or psychological consultant when [s]he believes such evidence could change [her] previous findings." *See Williams v. Kijakazi*, No. 3:20-cv-3222, 2022 WL 3045752, at *11 (N.D. Tex. July 6, 2022) (cleaned up), *R. & R. adopted*, 2022 WL 3042961 (N.D. Tex. Aug. 2, 2022). Here, relying on *Brister v. Apfel*, 993 F. Supp. 574 (S.D. Tex. 1998), Mr. Massengill argues that an updated medical opinion is required "when additional medical evidence is received that may affect the findings of the [SAMCs]." *See* Dkt. 14 at 6. *Brister*, however, affords the ALJ discretion to decide whether an updated medical opinion is necessary upon receiving medical evidence that postdates the SAMCs' opinions.[6] *See* 993 F. Supp. at 577 n.2 (calling for an updated opinion only when "additional medical evidence is received that *in the opinion of the ALJ* may change the [SAMCs'] findings"); *see also Moody v. Berryhill*, No. 4:18-cv-2409, 2019 WL 3412530, at *6

---

[6] The Court also notes that *Brister* relied upon Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (July 2, 1996). SSR 96-6p, however, was rescinded effective March 27, 2017 (prior to the ALJ's decision in this case) and replaced by SSR 17-2p. *See* SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017). SSR 96-6p included language that an ALJ "*must* obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the [SAMC's] finding that the impairment(s) is not equivalent to any impairment in the Listing." *See* SSR 96-6p, 1996 WL 374180, at *4 (emphasis added). SSR 17-2p does not contain such language. *See* SSR 17-2p, 2017 WL 3928306.

(S.D. Tex. July 29, 2019) (indicating "the great weight of authority in the Fifth Circuit holds that the decision to obtain an updated medical expert opinion is discretionary," and collecting cases).

The ALJ properly exercised her discretion here. The ALJ explicitly stated that both SAMC assessments were consistent with "records submitted after the[] assessments[,]" including in particular the "cervical and lumbar spine pathology." *See* Tr. 21. Because she found the additional medical evidence comported with the SAMCs' opinions, the ALJ was not required to order an updated medical opinion. *See Williams*, 2022 WL 3045752, at *11 (an updated medical opinion from a SAMC is only required when the ALJ "believes such evidence could change her previous findings"). To the extent Mr. Massengill argues the ALJ erred in finding the August 2019 MRI studies comported with the SAMC opinions, and more generally, to the extent Mr. Massengill argues the MRI studies rendered the RFC unsupported by substantial evidence, the Court finds neither argument persuasive. The ALJ's decision reflects that she carefully considered the August 2019 lumbar and cervical MRI studies in formulating Mr. Massengill's RFC. The MRI results were described at length in the ALJ's decision:

> An MRI of the lumbar spine taken in August of 2019 showed a disc bulge and posterior disc herniation, moderately severe bilateral foraminal stenosis with associated vertebral ridging and potential impingement on the L5 nerve roots bilaterally at the L5-S1 level; however, there was no central spinal stenosis. The report also showed a broad-based disc protrusion and grade I retrolisthesis causing moderate bilateral foraminal stenosis at L4-5, but there was no central spinal stenosis or impingement.
>
> An MRI of the cervical spine taken in August of 2019 showed multilevel disc disease with associated spondylosis. The report showed moderately severe right-sided, mild to moderate left-sided, and mild central foraminal stenosis. At the C4-5 level, the report showed a fairly large posterior disc herniation with significant spinal stenosis, marked lateral recess stenosis and probable impingement on the right C6 nerve root, but with only mild to moderate bilateral foraminal stenosis. At the C5-6 level, the report showed marked foraminal stenosis on the right with impingement of the right C6 nerve root, as well as moderately severe left-sided foraminal stenosis and mild to moderate central canal stenosis.

Tr. 17–18 (internal citations omitted). The ALJ acknowledged that the above MRI results signaled "rather significant degenerative disc disease." *See* Tr. 18. But she went on to note that despite these MRI results, Mr. Massengill's primary care treatment records after the August 2019 MRI results "document[ed] few significant objective examination findings, much less abnormalities." *Id.* (citing to Exhibit 6F, which corresponded to primary care records dated December 2018 through March 2020). The ALJ looked specifically to treatment records from Mr. Massengill's primary care provider, Dr. Jonathan Matthews, D.O. *Id.* These records reveal that Mr. Massengill only sought treatment twice after his August 2019 MRI studies: first, in November 2019, when he saw Dr. Matthews in order to review his MRI results; and second, when he returned for a follow-up visit in March 2020. *See* Tr. 589, 591. During the November 2019 visit, Dr. Matthews refilled Mr. Massengill's prescription medications, reviewed the MRI results, and referred Mr. Massengill to another provider for evaluation and treatment of "[n]euroforaminal stenosis of lumbar spine." *See* Tr. 591. There is no indication that Mr. Massengill ever saw the referred provider. When Mr. Massengill returned to see Dr. Matthews six months later in March 2020, Dr. Matthews found Mr. Massengill "was stable on current medications" and not experiencing any side effects from the use of prescription pain medication. *See* Tr. 589; *see also* Tr. 18 (ALJ's decision stating: "In March of 2020, Dr. Matthews indicated [Mr. Massengill's] pain was stable on current medications, and [Mr. Massengill] reported no significant adverse side effects."). In addition to this sparse, conservative treatment plan, the ALJ noted that Mr. Massengill's function report, which was completed less than two months before the August 2019 MRI studies, evidenced a continued ability to attend to activities of daily living:

> [Mr. Massengill] indicated in a June 2019 Function Report that although he needed reminders or encouragement for activities such as showering and brushing his teeth, he was ultimately able to care for his own personal hygiene. He said he was able to prepare simple meals for himself on a daily basis, as well as complete meals

9

>approximately three times per month. He also said he was able to do some housework including laundry and mowing the lawn. According to [Mr. Massengill], he did not drive due to anxiety, but he was able to leave home unassisted and could get a ride when he needed to go somewhere. He said he was able to shop in stores approximately once per week, albeit for brief periods of time.

*See* Tr. 20–21. The ALJ concluded that "such evidence, when considered in combination with the objective evidence . . ., supports a finding that [Mr. Massengill] remains capable of performing the reduced range of light work described" in the RFC. *See* Tr. 21. Thus, the Court finds there was substantial evidence to support the ALJ's RFC assessment, as well as the ALJ's determination that the August 2019 MRI studies were consistent with the limitations assessed by the SAMCs. The ALJ did not err by not ordering an updated medical opinion. *See Malone v. Colvin*, No. H-13-3043, 2015 WL 1291824, at *15 (S.D. Tex. Mar. 16, 2015) (no error in declining to obtain updated medical opinion where ALJ's decision was based on substantial evidence); *see also Moody*, 2019 WL 3412530, at *6 (same); *Williams*, 2022 WL 3045752, at *11 ("Because the rest of the evidence was not likely to change the ALJ's findings, she was not required to request an updated medical opinion from an SAMC.").

Finally, the Court finds that Mr. Massengill has not shown the ALJ's failure to order an updated SAMC opinion prejudiced him. To establish prejudice, Mr. Massengill must show that the ALJ "could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). Though Mr. Massengill generally argues there was a "reasonable possibility that such evidence [an updated SAMC opinion] may have changed the outcome," *see* Dkt. 14 at 6, he does not dispute the ALJ's finding that there were no other opinions in the record finding Mr. Massengill "more physically limited than [what was] set forth" in the SAMC opinions. *See* Tr. 21. In the absence of such opinions, the Court cannot agree with Mr. Massengill's argument that an updated

SAMC opinion would have changed the outcome of the ALJ's RFC. *See Ray v. Saul*, No. 4:20-cv-453, 2021 WL 2043100, at *5 (N.D. Tex. May 21, 2021) ("To upset the ALJ's decision, the plaintiff must show that there was insufficient evidence for a reasonable person to reach the same conclusion as the ALJ, not that some contradictory evidence might exist."); *see also id.* at *6 ("The ALJ's determination that [the plaintiff] should be limited to sedentary work supports a conclusion that he considered evidence of the condition of her knees. The ALJ cited evidence to support his RFC determination, and [the plaintiff] has not shown than an updated SAMC opinion would have changed the outcome of the ALJ's RFC." (internal citations omitted)); *Malone*, 2015 WL 1291824, at *16 ("[E]ven if the ALJ should have obtained an opinion from a medical expert or requested a consultative examination, Plaintiff points to no additional evidence that would have been adduced that could have changed the result. Therefore, Plaintiff has failed in her burden of showing that she was prejudiced by the ALJ's failure to consult a medical expert."); *Pridgeon v. Comm'r of Soc. Sec.*, No. 4:20-cv-01178, 2022 WL 2079895, at *5 (N.D. Tex. Apr. 1, 2022) ("As the additional evidence comported with the SAMCs' opinions that [the claimant] has the RFC to perform medium work, the ALJ enjoyed discretion in declining to obtain an updated medical opinion for that evidence."). Accordingly, remand is not warranted on this issue.

### B. Headaches

Mr. Massengill next contends the ALJ failed to include any limitations related to his headaches in the RFC assessment. *See* Dkt. 14 at 7–8. Mr. Massengill argues that even though the ALJ determined he did not have a primary headache disorder, the ALJ should have considered the possibility that his cervical degenerative disc disease *may* produce a cervicogenic headache. *Id.* He thus contends the ALJ erred by failing to "consider whether cervicogenic headaches impact

11

[his] residual functional capacity" and by failing to "assess the effect of such headaches on his ability to sustain employment." *Id.* at 8.

Mr. Massengill's argument is without merit. The ALJ determined that Mr. Massengill's headaches did not rise to the level of a medically determinable impairment:

> [Mr. Massengill] also alleged disability due to headaches, but the treatment records document no consistent complaints of headaches and do not document the combination of findings documented by an acceptable medical source as set forth in SSR 19-4p. Further, during the consultative physical examination in December of 2018, [Mr. Massengill] said he was no longer taking Imitrex. He said his headaches were "less frequent and less severe." Thus, [Mr. Massengill's] headache allegations do not establish he existence of a medically determinable—much less "severe"—impairment.

*See* Tr. 13–14 (internal citation omitted). Mr. Massengill does not dispute the above findings by the ALJ, electing instead to argue that the ALJ should nevertheless have considered the possibility of cervicogenic headaches in her decision. He does not, however, reference any objective medical evidence in the record containing a diagnosis of cervicogenic headaches. Nor does he point to any record evidence finding that he had any limitations, work-related or otherwise, due to headaches. Because the ALJ did not find Mr. Massengill's headaches were a medically determinable impairment, let alone a severe impairment, the ALJ did not err in failing to address Mr. Massengill's headaches in the RFC analysis. *See Rowe v. Colvin*, No. 16-cv-204, 2017 WL 3821473, at *16 (M.D. La. Aug. 31, 2017) (determining the ALJ did not err in failing to address immune deficiency in the RFC analysis because the ALJ found that immune deficiency was not a medically determinable impairment).

## IV. RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 6th day of September, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE